UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS JUDGE,

    Plaintiff,

v.                                                                                                    Case No. 11-cv-12581
                                                                                             Paul D. Borman
                                                                                             United States District Judge

METROPOLITAN LIFE INSURANCE
COMPANY,

    Defendant.

_____/

**OPINION AND ORDER**
**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 10), and**
**(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 11)**

This case involves Thomas Judge's ("Plaintiff") claim for disability insurance benefits. Plaintiff filed a Complaint in Wayne County Circuit Court on May 11, 2011, alleging that Metropolitan Life Insurance Company ("Defendant") breached his disability insurance contract when it failed to pay him disability benefits. Defendant removed the case to this Court on June 14, 2011, on the basis of federal question jurisdiction, because Plaintiff's claim is governed by the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (Dkt. No. 1.) On October 14, 2011, both parties moved for summary judgment. (Dkt. Nos. 10 and 11.) Both parties also filed Responses on November 15, 2011. (Dkt. Nos. 14 and 15.) Neither party filed a Reply. The Court held a hearing on Wednesday, December 7, 2011.

For the reasons stated below, the Court will GRANT Defendant's Motion, DENY

1

Plaintiff's Motion, and dismiss the action.

## I. BACKGROUND

Plaintiff is 49 years old and began working for Delta Airlines, Inc., as a baggage handler in April of 1990. Plaintiff's job required him to lift heavy bags of luggage and transport them to and from aircraft. As an employee, Plaintiff participated in the Delta Airlines, Inc., Group II Life Insurance Plan (the "Plan"). Under the Plan, Plaintiff carried a $20,000 Basic Life Insurance policy and an $80,000 Optional Life Insurance policy. Plaintiff was eligible to receive a single payout of the full amount of his insurance plan – $100,000 – if he became totally and permanently disabled. The Plan provided as follows regarding total and permanent disability:

> Total and Permanent Disability or Totally and Permanently Disabled means, for purpose [sic] of this section, that because of a sickness or an injury either:
>
> You are expected never again to be able to do:
>
> Your job; and
>
> Any other job for which you are fit by education, training or experience . . . .

(R. 33.)

On March 23, 2010, Plaintiff underwent surgery at the University of Michigan Hospital for an aortic valve repair. (R. 148.) After the surgery, Plaintiff was advised not to lift greater than 10 pounds and not to return to work until cleared by his cardiac surgeon, Dr. G. Michael Deeb, at a followup appointment. (R. 147.)

On April 23, 2010, Dr. Deeb noted that Plaintiff was "doing well" and "that he can increase his activity[,]" but should "stay on a 15 pound restriction[.]" (R. 142.) On July 7, 2010,

Dr. Himanshu J. Patel noted that Plaintiff "may gradually increase his lifting, pushing, and pulling to maximum of 50 pounds[,]" and that Plaintiff "may participate in mild-to-moderate intensity level aerobic activities." (R. 140.) Dr. Himanshu also stated that Plaintiff should take "an additional six weeks' time off work to complete his physical therapy and help him resolve his postoperative chest wall pain before returning to work." (R. 140.)

On October 15, 2010, Dr. Deeb completed an Attending Physician Statement stating that Plaintiff could lift between 30 to 35 pounds and could work eight hours a day, but that he could only sit intermittently for two hours, could not stand or walk for more than an hour, and could not climb, twist, bend, stoop, or reach above shoulder level. (R. 128.) Dr. Deeb also noted that Plaintiff was totally disabled for an indefinite period of time. (R. 128.)

Plaintiff completed an application for payout of his disability insurance policy on November 1, 2010. In a Personal Profile completed on November 4, 2010, Plaintiff noted the sit/stand/walk restrictions in Dr. Deeb's Attending Physician Statement. (R. 132.) Plaintiff also stated that he had low endurance and tired easily with any moderate exertion, but that he did assist with some household chores like laundry and washing dishes. (R. 130, 132.)

On December 23, 2010, Dr. Daniel Harber completed an Attending Physician's Statement for Plaintiff. (R. 165.) Dr. Harber found that Plaintiff could not lift more than 30 pounds, could not sit for more than two hours, and could not stand, walk, climb, twist, bend, stoop, or reach above shoulder level. (*Id.*) However, Dr. Harber also noted that Plaintiff could push and pull with a 30-35 pound limit, that he could work a total of eight hours a day, and stated that "all areas should improve besides lifting restrictions." (*Id.*) Although he advised Plaintiff not to return to work based on Dr. Deeb's recommendation, Dr. Harber did, however, recommend

occupational therapy and job modification for Plaintiff. (*Id.*)

On January 6, 2011, Defendant denied Plaintiff's claim, finding as follows:

> Dr. Patel's recommendation in July was that you complete your physical therapy course and you were allowed to gradually increase your lifting, pushing and pulling to the maximal of 50 pounds; also that you would need an additional 6 weeks off work to complete your physical therapy. Based on this information from Dr. Patel in July, it appeared at that time you were not ready to return to your job which required you to lift heavy luggage, however you had the capacity to perform at least light duty activities.
>
> Dr. Deeb completed an Attending Physician's Statement October 15, 2010 indicating that your lifting was restricted to 30-35 pounds and that you could work 8 hours a day. Dr. Deeb indicated you were to perform no walking or standing activities and you were limited in your sitting to 2 hours; however Dr. Deeb did not provide objective medical documentation as to why you were not able to stand or walk. It is unclear as to why you would have these severe limits in standing and walking or what medical conditions were preventing you from standing and walking. . . .
>
> . . . . Dr. Harber indicated you were to perform no standing or walking activities. There is no indication that your symptoms continued to be severe several months after your surgery or that you were confined to bed as a result of you not being able to perform walking or standing activities.

(R. 170-71.)

Plaintiff, through counsel, appealed the decision denying his disability claim on January 26, 2011. (R. 173.) Plaintiff admitted that he had no additional medical records confirming his disability. (R. 175.) Defendant upheld its decision on April 6, 2011. (R. 185.)

## II. STANDARD OF REVIEW

As an initial matter, the Court notes that Plaintiff concedes that ERISA governs the instant claim. *See Hutchinson v. Fifth Third Bancorp.*, 469 F.3d 583, 588 (6th Cir. 2006) (noting

4

that "ERISA prevents the distinct state law tort scheme from superimposing an extra layer of regulation on top of the ERISA-regulated plan benefit determination.").

"Generally, federal courts review a plan administrator's decision to deny benefits de novo." *Schwalm v. Guardian Life Ins. Co. of Amer.*, 626 F.3d 299, 308 (6th Cir. 2010). However, if a plan "reserves discretionary authority to determine eligibility and construe policy terms," then the arbitrary and capricious standard applies. *Id.*

In the instant case, the Plan provides that "We [Defendant] will determine if You [the insured employee] qualify for [disability] payments after We receive Proof that You have satisfied the requirements of this section." (R. 33.) The Plan further provides that "Proof" consists of "evidence satisfactory to Us that a person has satisfied the conditions and requirements for any benefit described in this certificate." (R. 22.) The Court finds this language sufficiently reserves discretionary authority to determine eligibility and policy terms to Defendant, the plan administrator. Accordingly, the Court will apply the arbitrary and capricious standard of review.

A decision is not arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome . . . ." *Schwalm*, 626 F.3d at 308 (citing *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003)). "Nonetheless, this deferential standard is 'tempered' by any possible conflict of interest where the Plan Administrator both determines eligibility and funds the plan." *Farhner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338, 342 (6th Cir. 2011).

### III. ANALYSIS

Plaintiff argues that Defendant applied the wrong definition of total disability when it

denied his claim. Plaintiff asserts that the denial letters found that Plaintiff was not disabled based on a standard that he was unable to do any work, but the proper standard only requires the inability to do the Plaintiff's job as a baggage handler or another job for which Plaintiff is fit by education or experience.

The January 6, 2011 letter denying Plaintiff's claim does contain an incorrect definition of disability, claiming it includes the inability "never again to be able to do any work at all for wage or profit." (R. 169.) However, the April 6, 2011 letter affirming the denial states the correct Plan definition for total disability. (R. 185.) Defendant thus did not apply an incorrect definition of disability during the appeal phase of Plaintiff's claim.

Plaintiff argues that, because he only has a high school education and his only job experience involved heavy lifting-type work, he qualifies under the Plan's definition of disability because he can no longer perform any heavy lifting work. However, the Court finds that this reading of the Plan language, "[a]ny other job for which you are fit by education, training or experience," is too narrow. Plaintiff's reading suggests that a Plan beneficiary would qualify as disabled if the beneficiary could no longer do his job or a substantially similar job. But the Plan language includes "[a]ny other job" for which a Plan beneficiary may be qualified, including jobs that may be unlike the beneficiary's previous employment. Surely Plaintiff's high school education qualifies him for a number of jobs that do not require heavy lifting, possibly within the Delta Airlines organization. The Court thus finds Plaintiff's argument unpersuasive.

Plaintiff also contends that Defendant never ordered an independent medical examination and never consulted a vocational expert to determine Plaintiff's ability to obtain work.

Defendant is not required to hire an independent medical examiner or a vocational expert

before making a benefits determination. "Rather, . . . we regard [Defendant]'s decision to conduct a file review rather than a physical exam as just one more factor to consider in our overall assessment of whether [Defendant] acted in an arbitrary and capricious fashion." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). Defendant's decision must, however, be based on substantial evidence, and Defendant must "review the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006).

     Defendant did not act arbitrarily and capriciously in conducting a file review. There was sufficient evidence in the records of Plaintiff's treating physicians for Defendant to conclude that Plaintiff was not totally disabled. Defendant noted that Dr. Patel believed Plaintiff could return to work after six weeks of physical therapy in July 2010. While Dr. Harber opined that Plaintiff was totally disabled in December 2010, Defendant stated that there was "no objective clinical data to explain or support what occurred beyond July 7, 2010 to result in a functional status of essentially being bedridden to wheelchair bound, with no standing or walking ability." (R. 186.) Defendant also noted that "[t]he standing and walking function listed is inconsistent with the advised lifting and pushing and pulling capabilities, and also inconsistent with Dr. Harber's documentation that [Plaintiff] could work eight hours a day." (*Id.*) Accordingly, the Court does not find that Defendant acted arbitrarily and capriciously in denying Plaintiff's claim. *See Schwalm v. Guardian Life Ins. Co. of America*, 626 F.3d 299, 312 (6th Cir. 2010) (finding that defendant's decision was not arbitrary and capricious where "[i]t accurately summarized and considered the evidence [the plaintiff] submitted . . . . Then, it determined that [the plaintiff] retained the physical capability to perform a sedentary job, . . . and that there was insufficient

medical evidence . . . to prove disability.").

## IV. CONCLUSION

For the reasons stated above, the Court:

(1) **GRANTS** Defendant's Motion to Affirm the Administrator's Determination;

(2) **DENIES** Plaintiff's Motion for Judgment, and

(3) **DISMISSES** the case **WITH PREJUDICE**.

**SO ORDERED.**

_____
PAUL D. BORMAN
UNITED STATES DISTRICT COURT JUDGE

Dated: 12-22-11
Detroit, Michigan